R. L. Feltinton, Appellant, v. Robert G. Scott and Kathryn A. Scott, Appellees.

Gen. No. 44,781.

Opinion filed April 25, 1950. Rehearing denied May 9, 1950. Released for publication May 10, 1950.

AARON SOBLE, of Chicago, for appellant.

ERNEST C. RENIFF, of Chicago, for appellees.

MR. PRESIDING JUSTICE FRIEND delivered the opinion of the court.

On October 9, 1947, plaintiff filed a complaint in chancery to subject property alleged to be owned by the defendant Robert G. Scott, in joint tenancy with his wife Kathryn, to the lien of a judgment originally taken against Scott on March 15, 1932 and revived on September 25, 1947. Issue having been joined, the cause was referred to a master who recommended that a decree be entered in favor of plaintiff, but the chancellor, pursuant to hearing, sustained defendants' exceptions to the master's report, and entered a decree dismissing the complaint for want of equity, from which plaintiff appeals.

There is substantially no dispute as to the salient facts. On March 15, 1932, John E. Sullivan, receiver of Garfield State Bank, had judgment against Scott in the municipal court for $1,862.52 and costs, predicated on a note dated April 21, 1931 for $1,750, payable to the order of the bank. Thereafter, on June 28, 1932, execution issued and was duly served on Scott, who filed a schedule claiming exemptions, and the execution was returned, "No property found, no part satisfied." Fifteen years later, on September 25, 1947, the judgment was revived, execution again issued, and on October 2, 1947, Scott filed a debtor's schedule which, together with the execution returned, showed "No property found, no part satisfied."

The record relative to the ownership of the property in question embraces the following documents: (1) quitclaim deed dated June 29, 1945, by which Grace Bloom conveyed title to the property to Robert G. and Kathryn A. Scott, husband and wife, as joint tenants; (2) written and unrecorded trust deed dated June 27, 1945, executed by Scott and wife naming Grace Bloom

■■■■■■■■■■■

■■■■■■■■■■

as sole beneficiary; and (3) quitclaim deed dated January 10, 1947 from Scott and wife to Kathryn A. Scott, recorded on September 8, 1947.

The property involved is a two-story seven-room house and garage, located at 43 North Parkside avenue, on the west side of Chicago. Scott contends that he never owned any interest in the property in question; that he and his wife took title to the property on June 29, 1945, as trustees for Grace Bloom under the trust deed bearing date June 27, 1945. Plaintiff, on the other hand, asserts that the trust deed, as well as the conveyance of the property subsequent to June 29, 1945, was a fraudulent device adopted by Scott to defeat the collection of plaintiff's judgment. Thus, as the master stated in his report, "the case narrows down to the question: Who is the true owner of the property involved?"

Scott had been employed as salesman for Arcus Ticket Company in Chicago for approximately ten years at a maximum salary of $56 a week. He had been married 22 years. During that period he resided in the Parkside avenue home with his wife and son who, at the time of the trial, was 18 years of age and attending the University of Illinois, his wife's mother and father, Mr. and Mrs. Edward Smith, and his wife's aunt, Grace Bloom. Miss Bloom was the owner of the property, having acquired title thereto in 1922. She paid the taxes and carried the insurance on the house. Scott never paid any rent. The household expenses were shared by Scott, Miss Bloom and the Smiths. For 22 years Scott had paid his share, on a monthly basis, to Miss Bloom, who had done the purchasing and managed the household.

The purpose of the deed of June 29, 1945 and the trust deed of June 27, 1945 constitutes the principal controversy in the case. Scott testified without contradiction that shortly prior to June 29, 1945, Miss Bloom told him that "she wanted my wife to have

400

some property in case anything happened to her [Miss Bloom] and she wanted somebody to handle and take care of it. And I said I would get the gentleman that works for our firm, or connected with our firm in some way, that does our legal work, and I would ask him to come out and see her.'' Henry L. Blim, attorney for Scott's employer, was the person referred to. After consulting Miss Bloom, he prepared the quitclaim deed from Grace Bloom to Scott and his wife, as well as the trust deed from the Scotts to Miss Bloom, and brought these documents to their home on June 29, 1945, where they were both signed. No consideration whatever passed between Miss Bloom and the Scotts for either of these conveyances. After these documents were signed, Blim had the quitclaim deed recorded, but not the trust deed, and thereafter retained both of them in his possession. Blim represented Miss Bloom and not Scott in these transactions, and presumably Miss Bloom paid for his services, because Scott stated that he did not do so.

It is clear and undisputed that when Blim had these documents prepared and executed, neither he nor Miss Bloom had any knowledge whatsoever about the judgment which had been entered against Scott in 1932. Blim testified that he was first apprised of this old obligation of Scott at the annual Christmas party of the Arcus Ticket Company in 1946, which he and Scott attended. In the course of a conversation between them, Scott told Blim of the judgment that had been entered on the old bank note. Blim then said: ''Bob, you should have told me about that when we drew up that original agreement. I never would have had that deed go to you as well as to your wife. This may involve this property some way or other and it is unfair to Grace Bloom. You have got to make a deed over conveying it to your wife, because it was for your wife that Grace Bloom was doing it. I am going to prepare a deed and I am going to have you and your

wife sign it. . . . If I had known, Bob, that you had this matter against you, I never would have let it go in that way. It would have gone to your wife, only, because it was for your wife that Miss Bloom was doing it.'' Following that conversation Blim prepared the quitclaim deed from the Scotts to Kathryn A. Scott dated January 10, 1947, which was signed at the Bloom home and subsequently recorded. Blim stated emphatically that he had no knowledge of the old judgment against Scott until his conversation with him. It will be noted that all of these transactions were consummated long prior to June 10, 1947, when the plaintiff, Feltinton, obtained the assignment of the Scott judgment from the receiver of the Garfield State Bank.

. In the course of his report, the master, after reciting the pertinent facts, observed that ''the entire testimony creates two possibilities: first, Grace Bloom intended to give the property in question to Kathryn A. Scott and did so by a deed which vested a title by joint tenancy in Kathryn A. Scott and her husband Robert G. Scott, Sr., or, second, Grace Bloom transferred the property to be held in trust for her benefit.'' These two possibilities are interrelated. Grace Bloom had owned this residence for about 25 years. Kathryn Scott, her niece, had resided with her before she married Scott, and after their marriage both of them resided there, along with Mrs. Scott's father and mother, and Robert Scott, Jr. The close and friendly relations of these parties is indicated by the record. Miss Bloom was 70 years of age when she made the quitclaim deed on the advice of her attorney and in the manner suggested by him. Certainly she did not know that a judgment had been entered against Scott 15 years previously, nor did Blim know anything about it. It would be absurd to conclude that if either of them had had any knowledge of Scott's old indebtedness to the bank, they would have transferred the property to Scott so that a subsequent assignee of the

judgment could by a proceeding such as this, divest Miss Bloom of the home in which she had so long resided, and which she undoubtedly desired her niece, Mrs. Scott, to have after her (Miss Bloom's) death. The testimony is not susceptible of any other reasonable conclusion.

The second possibility suggested by the master, that Miss Bloom transferred the property to be held in trust for her benefit, is in consonance with the facts. The mechanics of this transaction were arranged by an attorney to whom Miss Bloom had indicated her wishes; she wanted to retain the beneficial interest in and control of the property during her lifetime, with the provision that her niece, Mrs. Scott, should have the property if anything happened to Miss Bloom.

■ After stating the two foregoing possibilities, the master concluded that, the deed being absolute on its face, defendants had the burden of establishing by clear and convincing evidence that a trust was intended by the two instruments, and that they had failed to do so. In the light of the evidence hereinbefore related, we are satisfied that defendants successfully assumed that burden, and showed by the requisite degree of proof that the deed was not intended to be an absolute conveyance but, rather, a trust for the benefit of Miss Bloom.

■ Shortly before the master's hearing was concluded, defendants' counsel reasserted the contention previously made, that Miss Bloom was a necessary party, that no decree could be entered unless she was made a party, because her interest would be adversely affected, and he moved that further hearings be postponed so as to give plaintiff an opportunity to correct the omission, and that upon his failure so to do within a reasonable time, the complaint be dismissed. We have already expressed the view that Miss Bloom was the principal party in interest in this transaction. The master disposed of this contention by holding that de-

fendants' defense was without merit because, under the trust instrument, the right "to receive the proceeds from rentals and from mortgages, sales or other dispositions of said premises . . . shall be deemed to be personal property . . ." and not any interest in the real estate. Blim testified that his stenographer prepared the trust deed from a form which she copied. It provides that "the following named persons shall be entitled to the earnings, avails and proceeds of said real estate according to the respective interests herein set forth, to-wit: Grace Bloom, all thereof." Most of the trust instrument is couched in language which does not fit the circumstances of this case; it is the type of instrument, used for syndicate purchase, which has on a number of occasions been before this court, where a group of purchasers desire to acquire property without liability for encumbrance and without engaging in a joint or common tenancy. One clause speaks of the right of the beneficiary to receive proceeds from rentals and from mortgages, sales or other dispositions of the premises. Of course there were no rentals or other avails. However, the main theme of the trust indicates that it was made for Miss Bloom's benefit; there is no other plausible explanation. Therefore she was a necessary party. Plaintiff seeks to satisfy his judgment from the sale of property which always belonged to Miss Bloom and which she never intended to absolutely dispose of during her lifetime. She wanted to retain her interest in and control of the property, and the trust deed so states. We think the chancellor properly dismissed the bill. No decree could be entered without bringing Miss Bloom into the proceeding; she had a right to defend. *Krueding v. Chicago Dock & Canal Co.,* 285 Ill. 79; *Cowles v. Morris & Co.,* 330 Ill. 11; *Schumacher v. Klitzing,* 353 Ill. 530.

Proceedings of this nature are frequently brought to set aside conveyances of property belonging to the

judgment debtor, either after judgment is entered or in anticipation thereof, but we have never before encountered a case where property belonging to someone other than the judgment debtor which was conveyed to him in trust, as in the instant case, without knowledge on the part of the grantor of the indebtedness, was sought to be subjected to a judgment lien by one who became a creditor by assignment long after the transaction was consummated.

Plaintiff is evidently in the business of purchasing *en masse* and for a nominal sum the assets of bankreceiver estates which, at the termination of the receivership, are considered by the receiver as uncollectible. Two other cases in which he brought suit on old judgments so purchased have previously been here for review (*Feltinton v. Rongetti,* 337 Ill. App. 383 (Abst.), and *Feltinton v. Rudnik,* 337 Ill. App. 286 (Abst.)); he now seeks legal blessing for this highly inequitable claim. It shocks the conscience to contemplate that, under the circumstances shown, he should be allowed to enforce a lien against property which never belonged to the judgment debtor but, rather, to a third and innocent person who was not even made a party to the proceeding. The decree of the circuit court is affirmed.

*Decree affirmed.*

SCANLAN, J., concurs.

SCHWARTZ, J., took no part in the consideration or decision of this case.